UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: Platinum Performance, LLC
Domestic Limited Liability Company
EIN: 47-2698958,

Debtor.

No. 17-13064-j11

Platinum Performance, LLC,

Plaintiff,

v.

Adv. No. 17-_____-j

Gabriel Vigil and New Mexico Taxation and Revenue Department,

Defendants.

## VERIFIED COMPLAINT TO AVOID FRAUDULENT TRANSFER, COMPEL TURNOVER OF ASSET, AND ENJOIN SALE OF ASSET

Platinum Performance, LLC ("Platinum"), by and through its attorneys William F. Davis & Assoc., P.C. (William F. Davis and Nephi D. Hardman, Esqs.), for its Verified Complaint to Avoid Fraudulent Transfer, Compel Turnover of Asset, and Enjoin Sale of Asset, states as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(a) and (b) and Administrative Order 84-0324 of the United States District Court for the District of New Mexico, dated March 19, 1992 (Burciaga, C.J.).

2. Venue of this matter is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

3. The Court has jurisdiction over this matter as a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (C), (E), and/or (H).

4. This Court has personal jurisdiction over the parties hereto.

5. This matter is designated as an adversary proceeding under Fed. R. Bankr. P. 7001(1) and/or (7).

6. Platinum submits and consents to the jurisdiction of this Court to hear and determine this adversarial action.

## Parties and Other Relevant Persons and Entities

7. Platinum is a limited liability company organized and existing under the laws of the State of New Mexico.

8. The New Mexico Taxation and Revenue Department ("TRD") is a department of the government of the State of New Mexico.

9. Prestige Towing and Recovery, Inc. ("Prestige"), a corporation not a party to this case, is a corporation incorporated and existing under the laws of the State of New Mexico.

10. Gabriel Vigil ("Mr. Vigil") is an individual residing in Mora County, New Mexico. Mr. Vigil is the sole shareholder (either as community property or as separate property) of Prestige, and Mr. Vigil is the sole member and managing member of Platinum.

## Background

11. At some point prior to April of 2015, Prestige acquired a 2007 International 4300 DT 466 Allison tow truck (the "Tow Truck") for use in its business operations.

12. In order to finance its acquisition of the Tow Truck, Prestige gave a purchase money security interest in the Tow Truck to Southwest Community Bank.

13. Platinum was organized on July 17, 2015.

14. Following Platinum's organization, Platinum and Prestige entered into an agreement (the "Buy-Sell Agreement"), effective August 1, 2015, under which Platinum purchased certain assets, including the Tow Truck, from Prestige. The Buy-Sell Agreement is attached hereto as Exhibit A. A bill of sale reflecting the sale of the Tow Truck, as well as other assets, was

incorporated into the Buy-Sell Agreement as the final page thereof and was executed on April 29, 2016.

15. On the effective date of the Buy-Sell Agreement, the Two Truck was worth $28,500. A true and correct copy of an appraisal of the Tow Truck from this time period is attached hereto as Exhibit B. On the effective date of the Buy-Sell Agreement, Prestige owed Southwest Community Bank $27,510.25 for the Tow Truck. Platinum assumed this indebtedness under the Buy-Sell Agreement.

16. Subsequently, in approximately May of 2017, Platinum obtained a new title for the Tow Truck reflecting the owner as Platinum. Southwest Community Bank continued to be listed as a lienholder on this title.

17. Since its formation, a portion of Platinum's business consists of providing towing services.

18. In August of 2017, Platinum paid Southwest Community Bank the remainder of its debt that was secured by the Tow Truck. Of the funds Platinum used to pay off Southwest Community Bank, $10,000 was furnished by Mr. Vigil.

19. In August of 2017, Platinum sold the Tow Truck to Mr. Vigil in exchange for Mr. Vigil's $10,000 contribution toward the indebtedness with Southwest Community Bank that was secured by the Tow Truck.

20. In August of 2017, Platinum's debts exceeded its assets, and Platinum was insolvent.

21. Although Mr. Vigil allowed Platinum to use the Tow Truck following Platinum's transfer of the Tow Truck to Mr. Vigil, Mr. Vigil and Platinum did not execute a lease for the Tow Truck, and Mr. Vigil was not required to allow to Platinum to use the Tow Truck.

22. On November 3, 2017, TRD repossessed the Tow Truck.

Verified Complaint to Avoid Fraudulent Transfer,    Page **3** of **9**
Compel Turnover of Asset, and Enjoin Sale of Asset

Case 17-01087-t    Doc 1    Filed 12/05/17    Entered 12/05/17 15:52:05 Page 3 of 16

23. Upon information and belief, TRD's repossession of the Tow Truck was an action taken to enforce a tax lien filed against Prestige (the "Prestige Tax Lien").

24. Upon information and belief, the Prestige Tax Lien was filed after Platinum acquired the Tow Truck.

25. Upon information and belief, TRD plans to sell the Tow Truck at auction on December 8, 2017.

26. Upon information and belief, TRD or its repossession agent remains in possession of the Tow Truck.

27. Platinum filed its chapter 11 bankruptcy petition in this matter on December 1, 2017 (the "Petition Date"). Doc. 1. Platinum's Schedule A/B lists its right to recover the Tow Truck under 11 U.S.C. § 548, valued at $25,000 on the Petition Date. *Id.* at p. 12.

28. Upon information and belief, the Tow Truck was worth approximately $25,000 on the Petition Date.

29. Platinum continues as a debtor in possession under 11 U.S.C. § 1107, and no creditors' committee has been formed.

### Count I: Fraudulent Transfer Under 11 U.S.C. § 548(a)(1)

30. Platinum hereby incorporates all of the foregoing paragraphs.

31. Platinum may avoid, pursuant to 11 U.S.C. § 548(a)(1),

> any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>     (A) . . .; or
>     (B)
>         (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>         (ii)
>             (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; [or]

> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital . . . .

32. Platinum did not receive reasonably equivalent value in exchange for the Tow Truck from Mr. Vigil. The Tow Truck was worth between $25,000 and $28,000 at the time that Platinum transferred it to Mr. Vigil, and Mr. Vigil contributed only $10,000 to pay off the loan that was secured by the Tow Truck. Thus, Platinum did not receive a reasonably equivalent value in exchange for the Tow Truck.

33. Platinum was insolvent on the date that it transferred the Tow Truck to Mr. Vigil, and became more insolvent—because its debts exceeded its assets by an even greater amount—as a result of the transfer of the Tow Truck to Mr. Vigil.

34. Additionally, because there was no lease agreement under which Platinum had a right to use the Tow Truck following its transfer to Mr. Vigil, and because providing towing services was a portion of Platinum's operations, the transfer of the Tow Truck to Mr. Vigil left Platinum with an unreasonably small amount of operating capital.

35. Platinum is entitled to recover the Tow Truck from Mr. Vigil pursuant to 11 U.S.C. § 548(a)(1).

WHEREFORE, Platinum asks for judgment against Mr. Vigil requiring Mr. Vigil to transfer the Tow Truck back to Platinum and for such other and further relief the Court deems just and proper.

### Count II: Turnover of Asset Under 11 U.S.C. § 542(a)

36. Platinum hereby incorporates all of the foregoing paragraphs.

37. 11 U.S.C. § 542(a) provides:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the

value of such property, unless such property is of inconsequential value or benefit to the estate.

38. 11 U.S.C. §§ 542(c) and (d) do not limit the application of 11 U.S.C. § 542(a) to TRD in this case. 11 U.S.C. § 542(c) does not apply, because that section, by its own terms, applies only to "an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor," while TRD has actual notice of the commencement of Platinum's bankruptcy case. *See* Doc. 1, p. 16 (listing TRD on Platinum's Schedule E/F). 11 U.S.C. § 542(d) does not apply, because TRD is not a life insurance company.

39. Nor does 11 U.S.C. § 542(a)'s exclusion for custodians apply to TRD. Under 11 U.S.C. § 101(11), a "custodian" is

> (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
> (B) assignee under a general assignment for the benefit of the debtor's creditors; or
> (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

None of the foregoing descriptions apply to TRD in this case.

40. Platinum's right to recover the Tow Truck is an asset of the estate that Platinum may use in its business operations and is not of inconsequential value or benefit to the estate.

41. Under 11 U.S.C. § 542(a), TRD is required to deliver the Tow Truck to the Debtor.

WHEREFORE, Platinum prays the Court enter an order requiring TRD to deliver the Tow Truck to the Debtor.

### Count III: Injunction of Sale of Asset

42. Platinum hereby incorporates all of the foregoing paragraphs.

43. This Court is authorized to enjoin the sale of assets of the Debtor by a third party under 11 U.S.C. §§ 105(a) and 542(a). The former section provides: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

44. As established under Count II, TRD is required to deliver the Tow Truck back to the Platinum under 11 U.S.C. § 542(a). Therefore, because 11 U.S.C. § 105(a) gives the Court authority to issue an order "appropriate to carry out the provisions of this title," this Court has the power to issue an order allowing enforcement of 11 U.S.C. § 542(a). Since TRD plans to sell the Tow Truck at auction on December 8, 2017, the Court should enjoin such sale in order to enable the recovery of the Tow Truck by Platinum.

45. It is substantially likely that Platinum will succeed on the merits in its recovery of the Tow Truck from Mr. Vigil under 11 U.S.C. § 548(a). There is no dispute as to any of the facts surrounding application of 11 U.S.C. § 548(a), and Mr. Vigil will likely not oppose return of the Tow Truck to Platinum.

46. It is substantially likely that Platinum will succeed on the merits in its recovery of the Tow Truck from TRD under 11 U.S.C. § 542(a). Platinum can marshal substantial documentary evidence in support of its claim to the Tow Truck, which will show that Platinum's claim to the Tow Truck predates any lien filed against the Tow Truck by TRD.

47. Platinum will suffer irreparable harm if the Court does not enjoin the sale of the Tow Truck by TRD. Providing towing services is an important part of Platinum's business operations, and purchasing a new Tow Truck would be prohibitively expensive for Platinum. Without the revenue generated by Platinum's towing operations, Platinum will be less likely to successfully reorganize. Failing to enjoin TRD's planned sale of the Tow Truck would therefore cause irreparable harm to Platinum.

48. The threatened injury to Platinum from the sale of the Tow Truck by TRD in the absence of an injunction outweighs the harm that the requested injunction would cause to TRD. Upon information and belief, TRD does not require the proceeds from the sale of the Tow Truck to

continue its operations, and the Tow Truck is in itself not an integral part of the services TRD provides.

49. Enjoining the sale of the Tow Truck will not adversely affect the public interest. The public interest is served by uniformly enforcing the provisions of the Bankruptcy Code, including 11 U.S.C. §§ 542(a) and 548(a)(1). If TRD's planned sale occurs, that will thwart two of the purposes of the Bankruptcy Code, namely, preventing a run to the courthouse by various creditors to enforce judgments, and allowing the honest but unfortunate debtor to have a fresh start. The public interest also favors preserving the status quo during a bankruptcy until the various parties have had their competing claims to assets of the estate adjudicated by a bankruptcy court. Thus, enjoining the sale of the Tow Truck is not adverse to the public interest.

WHEREFORE, Platinum asks the Court to enjoin the sale of the Tow Truck by TRD and grant such other and further relief the Court deems just and proper.

Respectfully submitted,

WILLIAM F. DAVIS & ASSOC., P.C.
*/s/ Electronically filed on 12/5/2017* NDH
William F. Davis, Esq.
Nephi D. Hardman, Esq.
6709 Academy Rd NE, Ste A
Albuquerque, NM 87109-3363
Tel: (505) 243-6129
Fax: (505) 247-3185
*Attorneys for Plaintiff, Platinum Performance, LLC*

# VERIFICATION

STATE OF NEW MEXICO )
                             )ss.
COUNTY OF MORA     )

       Gabriel Vigil, being first duly sworn, upon his oath, deposes and states that he has read the foregoing Verified Complaint, that he knows and understands the contents thereof, and that the same is true and correct to the best of his knowledge, information and belief.


Gabriel Vigil

SUBSCRIBED AND SWORN to before me this 5th day of December, 2017, by Gabriel Vigil.

My commission expires:                       Valerie Montoya
                                                        Notary Public

> OFFICIAL SEAL
> **Valerie Montoya**
> NOTARY PUBLIC
> STATE OF NEW MEXICO
> My Commission Expires: June 2, 2020

F:\Platinum Performance\Adv.TRD\Pleadings and other documents\Complaint.doc

# BUY-SELL AGREEMENT OF CERTAIN ASSETS
# OF PRESTIGE TOWING & RECOVERY, INC.

THIS BUY-SELL AGREEMENT (hereinafter, the "Agreement") is effective August 1, 2015 (the "Effective Date"), and is made and entered into by and between Prestige Towing & Recovery, Inc. (hereinafter referred to as "Seller"), a New Mexico Corporation whose address is PO Box 766, Mora, NM 87732, and Platinum Performance, LLC (hereinafter referred to as "Buyer"), a New Mexico limited liability company whose address is Highway 518, Mile Marker 33.75, Mora, NM 87732.

## RECITALS

*Whereas* Seller owns certain assets that it desires to sell (hereinafter, the "Assets"), described with particularity on Exhibit A, attached hereto;

*And whereas* Buyer desires to buy the Assets from Seller at their fair market value minus any encumbrances thereon;

*And whereas* Buyer and Seller desire to make certain agreements in connection with the contemplated purchase and sale of the Assets;

*And whereas* Buyer and Seller desire to accomplish an asset sale and purchase, but not a sale and purchase of Seller's stock, ownership, or management rights;

*Now, therefore,* for and in consideration of the foregoing and of the mutual covenants, warranties, and agreements set forth below, Buyer and Seller agree as follows:

## TERMS OF THE TRANSACTION

### 1. Purchase Price and Payment Terms

Seller agrees to sell and Buyer agrees to buy the Assets for thirty thousand dollars ($30,000) plus assumption of liens asserted thereon by Community First Bank of Las Vegas and Southwest Capital Bank (the "Purchase Price").

The Purchase Price will be paid by wire transfer, personal check, cashier's check, or promissory note.

### 2. Closing Date and Procedures

Consummation of the sale of the Assets will take place on or before September 30, 2015. At the time of closing, Buyer shall deliver the Purchase Price to Seller, and Seller shall deliver to Buyer a signed Bill of Sale for the Assets. The Bill of Sale shall be in substantially the same form as the Bill of Sale attached hereto as Exhibit B. The "Closing Date" is defined as the first date on which both of the following events have occurred: (1) Buyer delivers the Purchase Price to Seller, and (2) Seller delivers to Buyer a signed Bill of Sale for the Assets.

### 3. Seller Warranties



EXHIBIT A

Seller warrants to Buyer that it is the lawful owner of the all of the Assets.

Seller promises and agrees to convey good, clear, and marketable title to the Assets, with the understanding that the Assets are encumbered, and will be encumbered on the Closing Date, as set forth on Exhibit A, attached hereto.

With the exception of the outstanding encumbrances against the Assets as listed on Exhibit A, Seller hereby warrants and forever agrees to defend the title to the Assets from any claims of third parties arising from, or claimed to arise from, events prior to the Effective Date.

Seller shall arrange for Buyer to assume full possession of the Assets on the Effective Date, or as agreed between the parties.

## 4. Assumption of Debt Encumbering Assets

As set forth on Exhibit A, attached hereto, Seller currently owes $373,474.76 to Community First Bank of Las Vegas (formerly known as First National Bank in Las Vegas), which is secured by a security interest in all of Seller's inventory, chattel paper, accounts, equipment, general intangibles, and fixtures. Furthermore, Seller currently owes $27,510.25 to Southwest Capital Bank, which is secured by a security interest in a 2007 International 4300 DT 466 Allison (the "Truck"). This aforementioned obligations of Seller are hereinafter referred to as the "Secured Loans." Buyer may, but is not required to, refinance the Secured Loans in its name. If Buyer does not refinance the Secured Loans in its name, Buyer shall assume said indebtedness and make full and timely payments on the Secured Loans, as are now required of Seller, to Community First Bank of Las Vegas and Southwest Capital Bank. Such payments to Community First Bank of Las Vegas and Southwest Capital Bank are over and above the Purchase Price and shall not be counted toward Buyer's payment of the Purchase Price to Seller.

If Seller makes any payment on the Secured Loans after September 30, 2015, such payment shall be added to the Purchase Price for Buyer.

## 5. Non-assumption of Other Liabilities

Except as specifically set forth above, Buyer is not assuming any liabilities of any type of Seller or any third party by this Agreement. This Agreement shall not establish, and shall not be construed to establish, any form of successor in business or successor liability relationship between Buyer and Seller.

## 6. Miscellaneous Provisions

Seller may use the Purchase Price, or any portion thereof, to clear any encumbrances on the Assets other than those listed above.

Until the Closing Date, Seller shall maintain insurance on the Assets.

If Buyer fails to refinance the Secured Loans in its name, and subsequently fails to pay Seller's obligations on the Secured Loans, such failure shall not impact, impair, or affect the

validity of the sale of the Assets accomplished by this Agreement and consummated by Seller's Bill of Sale. Rather, if Buyer fails to make payments under the Secured Loans, Seller shall have a claim against Buyer and may pursue its legal remedies against Buyer for failure to make payments on the Secured Loans.

Except as provided below, if Buyer or Seller fail to perform any of their respective obligations set forth herein, such failure shall not impact, impair, or affect the validity of the sale of the Assets accomplished by this Agreement and consummated by Seller's Bill of Sale. Except as provided below, in the event of such failure, or the event that either Buyer or Seller alleges such failure, Buyer or Seller, or both, may pursue their legal remedies for breach of contract and/or compensatory damages.

Seller may continue to engage in the same type of business as it has historically engaged in. Neither Seller nor Buyer agree to not compete with each other.

All of the terms, representations and warranties herein shall remain in full force and effect after the Closing Date. This Agreement shall bind and inure to the benefit of the Seller and Buyer and their respective heirs, executors, administrators, successors and assigns.

This Agreement may be executed in counterparts, and the counterparts together shall constitute a single agreement. A photocopy or facsimile of a signature shall be deemed valid and of the same effect as an original signature.

### 7. *Governing Law and Venue*

This Agreement and the transaction contemplated hereby shall be interpreted and construed in accordance with the laws of the State of New Mexico. Any suit, action, or other proceeding brought against either of the parties to this Agreement or any dispute arising out of this Agreement or the transactions contemplated hereby shall be brought in the courts sitting in Mora County, New Mexico or the courts sitting in Bernalillo County, New Mexico, and by its execution and delivery of this agreement, each party accepts the jurisdiction of such courts and waives any objections based on personal jurisdiction or venue.

### 8. *Inseparability Option*

If this Agreement shall contain any terms or provision which shall be invalid or against public policy or if the application of the Agreement is held to be invalid or against public policy, then the Buyer, at its option, shall be entitled to a rescission of this Agreement and a return of the Down Payment and any moneys paid under the Note.

## EXECUTION

*In witness whereof,* the parties hereto have caused this Agreement to be executed on the date or dates accompany their respective signatures:

SELLER:

_____          4/29/2016
Prestige Towing & Recovery, Inc.         Date
By: Gabriel Vigil
Its: President


BUYER:

_____          4/29/2016
Platinum Performance, LLC                Date
By: Gabriel Vigil
Its: Managing Member

# EXHIBIT A

## ASSETS OF PRESTIGE TOWING & RECOVERY, INC. SUBJECT TO THIS AGREEMENT

| Assets | Fair Market Value |
|---|---|
| • Furniture | $300 |
| • Machinery | $50,000 |
| • Transportation Equipment | $1,000 |
| • Computers | $2,000 |
| • Signs | $2,000 |
| • Shelving | $8,000 |
| • Tow Truck | $28,000 |
| • NAPA Inventory | $340,000 |
| • All works in progress | $3,000 |
| • All accounts receivable | $500 |
| • The following intellectual property | $1,000 |
|    o Telephone numbers | |
|    o Customer lists | |
|    o Website Address | |
| Total | $435,800 |

## LIENS

- Community First Bank of Las Vegas (formerly known as First National Bank of Las Vegas): $373,474.76 (secured by security interest in all of Seller's inventory, chattel paper, accounts, equipment, general intangibles, and fixtures)

- Southwest Community Bank: $27,510.25 (secured by purchase money security interest in 2007 International 4300 DT 466 Allison (the "Truck"))

EXHIBIT B

FORM OF BILL OF SALE

Bill of Sale

Prestige Towing & Recovery, Inc. hereby transfers and conveys all of its right, title, and interest in the following assets to Platinum Performance, LLC:

- Furniture
- Machinery
- Transportation Equipment
- Computers
- Signs
- Shelving
- Tow Truck
- NAPA Inventory
- All works in progress
- All accounts receivable
- The following intellectual property
    - Telephone numbers
    - Customer lists
    - Website address

In witness thereof, Gabriel Vigil has caused this Bill of Sale to be duly executed this __29__ day of April, 2016.

_____
Gabriel Vigil
President, Prestige Towing & Recovery, Inc.

State of New Mexico  )
                     ) ss.
County of            )

SUBSCRIBED AND SWORN TO BEFORE ME this __29th__ day of April, 2016, by Gabriel Vigil.

OFFICIAL SEAL
Bernadette J. Vigil
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 11-09-2017

_____
NOTARY PUBLIC

F:\Prestige Towing\Agreement to Sell Business.rev8.doc

# APPRAISAL SHEET
# FOR PRESTIGE TOWING & RECOVERY

MID AMERICA WRECKER SALES INC.
1935 WEST QUINCY AVE
SHERIDAN CO 80110

DATE 9/15/16

2007 INTERNATIONAL 4400 WITH DT466 ALLISON, VULCAN 10 TON ALL STEEL BED WITH UNDER REACH WITH CONTROLS IN THE CAB, WHEEL GRIDS, CAR CARRIER, ALSO EQUIPPED WITH SIDE PULLER, WITH TOOL BOXES, LIGHT BAR, WORK LIGHT, TIRES & LABOR WORK.

IN APPRAISAL THIS VEHICLE'S VALUE IS AT $75,000.00 AT THIS TIME

THANK YOU

Chris

CHRIS BRUNGARDT

**EXHIBIT B**